# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA RAQUEL MORAN ENRIQUEZ DE LOPEZ,<br>Petitioners,<br>v.<br>TIMOTHY S. ROBBINS, et al.,<br>Respondents. | Case No. 1:26-cv-00319-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends granting the petition for writ of habeas corpus and ordering that Respondents immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Guatemala who left Guatemala with the intention to seek asylum and related protections in the United States. On June 26, 2024, Petitioner arrived in the United States and was arrested and detained. Petitioner was removed from the United States on July 5, 2024. On September 4, 2024, Petitioner arrived in the United States and was arrested and detained. On September 7, 2024, Department of Homeland Security ("DHS") officials served Petitioner with a notice of intent to reinstate a prior order of removal. (ECF No. 1 at 6.[1])

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

Petitioner's earlier removal order was reinstated and she was removed from the United States a second time on October 2, 2024. (ECF No. 8-1 at 8.)

On November 7, 2024, Petitioner was encountered by U.S. Border Patrol near Harlingen, Texas. (ECF No. 8-1 at 8.) In December 2024, Petitioner underwent a credible fear interview and an asylum officer made a positive finding that Petitioner had a credible fear of persecution. (ECF No. 1 at 6; ECF No. 16-1 at 2–4.) On December 12, 2024, Petitioner was then released on supervision "[b]ecause the agency has not effected your deportation or removal during the period prescribed by law[.]" (ECF No. 1 at 7; ECF No. 8-1 at 11.) As a condition of release, Petitioner was required to enroll in the Intensive Supervision Appearance Program ("ISAP"). (ECF No. 1 at 7.)

At the time of Petitioner's release, immigration officials placed an ankle monitor on Petitioner. She was also instructed to appear at the U.S. Immigration and Customs Enforcement ("ICE") San Francisco field office on or around January 30, 2025 for the purpose of undergoing an interview and to be provided instructions about her upcoming proceedings in immigration court. On January 30, 2025, Petitioner appeared at the ICE San Francisco field office, where after a short interview, Petitioner was instructed to appear at the ISAP San Francisco office on February 12, 2025. On February 12, 2025, Petitioner appeared at the ISAP office as instructed, and DHS officials removed her ankle monitor. They also installed a monitoring app on Petitioner's phone, and she was instructed to take and send pictures on the first Thursday of every month. (ECF No. 1 at 7.)

The petition alleges that to the best of her knowledge, Petitioner complied with all of her monitoring requirements during the eleven months following her release. Petitioner submitted a photo via the app once a week as soon as she was instructed via text to do so. However, on November 6, 2025, Petitioner took a picture after receiving a text from ICE. Petitioner hit the "send" button, but the app did not indicate whether the image was transmitted to ICE. Petitioner sent a text message to her ICE officer through the app to ask for a confirmation that the photo had been received, but no response was provided. (ECF No. 1 at 8.)

\\\

On December 3, 2025, Petitioner was notified through her monitoring app that she was required to appear in person at the ICE field office in San Francisco. On December 4, 2025, Petitioner appeared for her check-in and was detained. The only information the ICE officer provided Petitioner was that she had missed taking a picture on an undetermined occasion. (ECF No. 1 at 8.) Petitioner was then transferred to the California City Detention Center. (Id. at 9.)

On January 15, 2026, Petitioner filed the instant petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On February 4, 2026, the district judge denied the motion for TRO because "Petitioner asserts that she was improperly detained pursuant to 8 U.S.C. § 1225(b)(1) . . . but given that petitioner is subject to a reinstated final order of removal, 8 U.S.C. § 1231 governs her detention." (ECF No. 10.)

On February 24, 2026, Respondents filed a notice that they wish to submit on the existing briefing. (ECF No. 12.) On March 30, 2026, Petitioner filed a reply. (ECF No. 14.) The parties also submitted supplemental briefing. (ECF Nos. 16, 18.) A review of the Executive Office for Immigration Review's Automated Case Information System indicates that an immigration judge granted an application on June 25, 2026, and that any appeal is due by July 27, 2026. See https://acis.eoir.justice.gov/en/caseInformation (last visited July 13, 2026).

**II.**

**DISCUSSION**

In her March 30, 2026 brief, Petitioner states:

> In its minute order of February 4, 2026, the Court indicated that Petitioner is petitioner is subject to a reinstated final order of removal under 8 U.S.C. § 1231, and therefore, her detention is mandatory. (Doc. 10.) However, according to Petitioner's family and her immigration attorney, the previous order for removal has not been reinstated. In fact, the Immigration Court appears to be treating Petitioner's case as a removal proceeding pursuant to Section 240 of the Immigration and Naturalization Act. (See Declaration of Jose F. Vergara, ¶ 2.)

(ECF No. 14 at 1.) The Court ordered Respondents to respond, and Respondents state that "the government believes that Petitioner's previous order for removal has been reinstated based upon the documents attached in Government Exhibit A." (ECF No. 16 at 1.) Government Exhibit A contains documents showing that on November 7, 2024, Respondents served Petitioner with a

Notice of Intent to Reinstate Prior Order and a Warrant of Removal/Deportation was issued. (ECF No. 16-1 at 12, 13.) In reply, Petitioner states:

> Although Respondents have presented evidence indicating that DHS has reinstated a prior order of removal, Petitioner and her immigration attorney insist that the Adelanto Immigration Court is treating the current proceedings against Petitioner as a Removal Proceeding pursuant to Section 240, rather than a withholding-only proceedings. In support of their claim, they provided this counsel copies of the last two notices of hearing in Petitioner's proceedings with the Adelanto Immigration Court, which indicate that the Adelanto Immigration Court is treating the current proceedings as removal—rather than withholding-only—proceedings.
>
> Petitioner recognizes that when an individual—such as her—has a prior order of removal, immigration law permits the government to reinstate that order, which would make detention mandatory pursuant to 8 USC § 1231 (a)(2)(A). *(Arango Marquez v. Immigr. & Naturalization Serv. ,* 346 F.3d 892, 898 (9th Cir. 2003).) However, the reinstatement of an order of removal is a separate procedure than removal. (See *Morales-Izquierdo v. Gonzales,* 486 F.3d. 484, 490 (9th Cir. 2007).) Here, Petitioner is providing notices of hearing indicating that the present proceedings are removal proceedings, rather than withholding-only proceedings. This supports a conclusion that the immigration court did not find that the government had re-instated her prior order of removal, and that therefore, the immigration court is treating the current proceedings as removal proceedings pursuant to Section 240, which would also support a finding that Petitioner was paroled into the United States. Therefore, based in the fact that Petitioner appears to not be subject to a reinstated final order to removal, Petitioner asks for the court to find that Petitioner is still subject to section 236 and that she therefore may still be released from custody under the fifth Amendment of the United States Constitution.

(ECF No. 18 at 1–2.)

Although Respondents served Petitioner with a Notice of Intent to Reinstate Prior Order on November 7, 2024, (ECF No. 16-1 at 12), Petitioner has submitted documentation that post-dates the November 7, 2024 notice and indicates that Petitioner is in removal proceedings rather than withholding-only proceedings, (ECF No. 14-1; ECF No. 18 at 3–8). Accordingly, the undersigned recommends finding that Petitioner is not in withholding-only proceedings and thus, Petitioner is not subject to detention pursuant to 8 U.S.C. § 1231.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v.</u>

Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

Accordingly, the undersigned recommends granting the petition for the reasons stated in Clene C.D. v. Robbins, No. 1:25-cv-01463-KES-SKO (HC), 2026 WL 84302 (E.D. Cal. Jan. 12, 2026); R.A.N.O. v. Wofford, No. 1:25-cv-01535-KES-EPG (HC), 2026 WL 40507 (E.D. Cal. Jan. 6, 2026); Bilal A. v. Wofford, No. 1:25-cv-01715-KES-HBK (HC), 2025 WL 3648366 (E.D. Cal. Dec. 16, 2025); Elmer Joel M. C. v. Wofford, No. 1:25-cv-01622-KES-CDB (HC), 2025 WL 3501200 (E.D. Cal. Dec. 6, 2025); Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999 (E.D. Cal. Nov. 22, 2025); W.V.S.M. v. Wofford, No. 1:25-cv-01489-KES-HBK (HC), 2025 WL 3236521 (E.D. Cal. Nov. 19, 2025). Further, the undersigned recommends that Petitioner be immediately released. See Lopez Lopez v. Noem, No. 1:26-CV-01359-KES-SAB (HC), 2026 WL 1108162, at *1 (E.D. Cal. Apr. 23, 2026) (ordering immediate release of petitioner who allegedly had multiple Alternatives to Detention program violations because "[c]ourts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation, rather than a pre-deprivation, hearing").

## III.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED;
2. Respondents be directed to immediately release Petitioner from custody with the same conditions she was subject to immediately prior to her re-detention; and
3. Respondents be enjoined and restrained from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that her physical custody is legally justified.[2]

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

---

[2] This does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

**FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 14, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE